UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

_____

Martin Gisairo,                                    Case No. 19-cv-2727 (WMW/LIB)

                          Plaintiff,

                                                   **ORDER GRANTING IN PART AND**
        v.                                         **DENYING IN PART DEFENDANT'S**
                                                   **MOTION TO DISMISS**

Lenovo (United States) Inc.,

                          Defendant.

_____

        This matter is before the Court on Defendant's motion to dismiss Plaintiff's first

amended complaint (complaint) for lack of standing, for failure to plead with particularity,

and for failure to state any claim on which relief can be granted.  (Dkt. 32.)  For the reasons

addressed below, the Court grants in part and denies in part Defendant's motion.

## BACKGROUND

        Plaintiff Martin Gisairo (Gisairo) is a United States citizen residing in Minnesota.

Defendant Lenovo (United States) Inc. (Lenovo) is a Delaware corporation with its

principal place of business in North Carolina.  Lenovo designs, manufactures, and sells

computers over the internet to consumers in the United States.  This putative class-action

lawsuit arises from the alleged defects in two Lenovo computer models, the Yoga 520,

which is better known as the Flex 5 laptop in the North American market, and the Yoga

730.

        Lenovo represents to consumers that the Flex 5 has a "360-degree hinge" and is able

to "easily flip into tablet mode . . . [or] tent mode."  The Yoga 730 includes a similar

functionality, including 360-degree flexibility and the ability to "transition from tablet mode to laptop mode and back."   Gisairo alleges that "Lenovo's marketing materials also boast of 'Ultra HD' and '4k' high resolution displays, claiming that 'you'll see every detail' and 'you'll be able to watch movies and browse the web in vivid detail from nearly every angle.' "

On December 29, 2017, Gisairo purchased a Lenovo Flex 5 laptop that included a limited warranty stating, in part: "each Lenovo hardware product that you purchase is free from defects in materials and workmanship under normal use during the warranty period."

Gisairo alleges that the Yoga 730 and the Flex 5 laptops are designed and manufactured with a monitor display defect.  According to Gisairo, the defect causes part or all of the monitor display to "flicker, freeze, black out, and/or display corrupted visuals." Gisairo also alleges that when these issues occur, "use of the computer is, at best, difficult, and often impossible because the user cannot see their own input or the computer's visual output."  This alleged defect "renders the device partially or wholly unusable."  And the defect is "triggered and exacerbated when the display is opened or moved, such as when the user folds the monitor into tent or tablet mode," Gisairo alleges.

Gisairo commenced this putative class-action lawsuit, arising from the alleged defects in both the Yoga 730 and Flex 5 devices, on October 17, 2019.  Lenovo moved to dismiss Gisairo's complaint on January 3, 2020.  Gisairo filed an amended complaint approximately one month later on February 10, 2020.  The amended complaint alleges 10 counts against Lenovo.  Counts I through V allege violations of the following statutes: Minnesota Prevention of Consumer Fraud Act (MPCFA), Minnesota Deceptive Trade

Practices Act (MDTPA), Minnesota Unlawful Trade Practices Act (MUTPA), Minnesota False Statements in Advertising Act (MFSAA), and Minnesota's Private Attorney General Statute, respectively. Counts VI through X allege the following: breach of express warranty in violation of the Magnuson-Moss Warranty Act, breach of implied warranty in violation of the Magnuson-Moss Warranty Act, breach of implied warranty, breach of express warranty, and unjust enrichment, respectively. Gisairo seeks both injunctive relief and damages. Lenovo moves to dismiss Counts I–V, VII, VIII, and X, for lack of standing, failure to plead with particularity, and failure to state a claim on which relief can be granted. *See* Fed. R. Civ. P. 9(b), 12(b)(1), 12(b)(6).

## ANALYSIS

Lenovo seeks to dismiss Gisairo's complaint on various grounds, arguing that Gisairo lacks standing, Gisairo fails to meet pleading requirements, and certain claims are barred based on the alleged contract between the parties.[1] These arguments are addressed in turn.

### I.  Standing

Lenovo argues that Gisairo lacks standing under Article III of the United States Constitution to pursue claims relating to the Yoga 730 laptop model, a model that Gisairo did *not* purchase. Gisairo argues that he has Article III standing to bring his claim based

---

[1]   Lenovo also maintains that the economic-loss doctrine bars Gisairo's Minnesota statutory claims. Under Minnesota law, this doctrine applies only to common-law tort or misrepresentation claims. *See* Minn. Stat. § 604.101; *accord Daigle v. Ford Motor Co.*, 713 F. Supp. 2d 822, 829 (D. Minn. 2010). Because such claims do not appear in the complaint, this argument need not be addressed.

on his purchase of the allegedly defective Flex 5 model and that he may represent a class consisting of purchasers who experienced similar defects with their Yoga 730 laptops.

The jurisdiction of federal courts extends only to actual cases or controversies. U.S. Const. art. III, § 2, cl. 1; *Neighborhood Transp. Network, Inc. v. Pena*, 42 F.3d 1169, 1172 (8th Cir. 1994). To satisfy the case-or-controversy requirement of Article III, a plaintiff must establish standing as an "indispensable part of the plaintiff's case." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992); *accord Hargis v. Access Capital Funding, LLC*, 674 F.3d 783, 790 (8th Cir. 2012). Standing is determined based on the facts as they existed when the complaint was filed. *Lujan*, 504 U.S. at 569 n.4. As a jurisdictional prerequisite, standing must be established before reaching the merits of a lawsuit, and a federal district court must dismiss any aspect of a lawsuit over which the court lacks subject-matter jurisdiction. *City of Clarkson Valley v. Mineta*, 495 F.3d 567, 569 (8th Cir. 2007); s*ee* Fed. R. Civ. P. 12(h)(3). Therefore, the Court first addresses standing.

To satisfy the requirements of standing, each plaintiff must (1) suffer an injury in fact, (2) establish a causal relationship between the contested conduct and the alleged injury, and (3) demonstrate that a favorable decision would redress the injury. *City of Clarkson Valley*, 495 F.3d at 569; *accord Hargis*, 674 F.3d at 790. An injury in fact "must be concrete, particularized, and actual or imminent." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (internal quotation marks omitted). The purpose of the imminence requirement "is to ensure that the alleged injury is not too speculative for Article III purposes—that the injury is *certainly* impending." *Id.* (internal quotation marks omitted). Allegations of a possible future injury are insufficient to confer standing. *Id.*

4

Whether Gisairo has standing for products in the Lenovo line that he did not purchase presents a question of law that pertains to the intersection of Article III standing and class certification under Rule 23, Fed. R. Civ. P.

In certain circumstances, questions of standing in a class-action case may be postponed until after the class has been certified when class certification is "logically antecedent" to standing. *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 612 (1997) (concluding that, because class-certification issues were "logically antecedent to the existence of any Article III issues," it was appropriate to address the class-certification issues first); *see also Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 831 (1999) (describing class-certification issues as " 'logically antecedent' to Article III concerns").

Courts across the United States, including courts within the District of Minnesota, have split on whether and in what circumstances Article III standing issues may be postponed until after class certification when class certification is "logically antecedent" to standing. *In re Refrigerant Compressors Antitrust Litig.*, No. 2:09-md-02042, 2012 WL 2917365, at *5 (E.D. Mich. July 17, 2012) (internal quotation marks omitted) (recognizing split); *compare Barclay v. ICON Health & Fitness, Inc.*, No. 19-cv-2970 (ECT/DTS), 2020 WL 6083704, at *6 (D. Minn. Oct. 15, 2020) (concluding that the issue of whether plaintiffs may "assert any claims concerning treadmill models that they did not purchase" is not an issue of standing but instead "is better resolved at class certification"), *with Chin v. Gen. Mills, Inc.*, No. 12-2150 (MJD/TNL), 2013 WL 2320455, at *3–4 (D. Minn. June 3, 2013) (holding that plaintiff who purchased one product lacked standing to challenge alleged misrepresentations pertaining to another related product that plaintiff had not purchased).

Indeed, it is widely acknowledged that the issue of whether class certification should be reached before standing is a "difficult chicken-and-egg question." *Perez v. Nidek Co.*, 711 F.3d 1109, 1113 (9th Cir. 2013).

Some courts have described a "growing consensus among district courts that class certification is 'logically antecedent,' where its outcome will affect the Article III standing determination, and the weight of authority holds that in general class certification should come first." *Winfield v. Citibank, N.A.*, 842 F. Supp. 2d 560, 574 (S.D.N.Y. 2012) (internal quotation marks omitted); *accord In re Carrier IQ, Inc.*, 78 F. Supp. 3d 1051, 1074 (N.D. Cal. 2015) ("[T]here is no rigid rule that precludes class certification from being addressed before standing issues.").

Here, if addressed before the class-certification stage, determining whether Gisairo has standing as to the claims arising from the Yoga 730 laptop model would affect whether the putative class has standing as to claims arising from the Yoga 730 laptop model. Therefore, class certification is logically antecedent to a determination of Article III standing.

Lenovo argues that Gisairo must have standing to assert his own individual claims "before any class claims are relevant." Without question, at least one named plaintiff must have standing. *In re SuperValu, Inc.*, 870 F.3d 763, 768 (8th Cir. 2017). And "[i]n the context of defective products, 'it is not enough for a plaintiff to allege that a product line contains a defect or that a product is at risk for manifesting this defect; rather, the plaintiffs must allege that *their* product *actually exhibited* the alleged defect.' " *Wallace v. ConAgra Foods, Inc.*, 747 F.3d 1025, 1030 (8th Cir. 2014) (quoting *In re Zurn Pex Plumbing Prods.*

*Liab. Litig.*, 644 F.3d 604, 616 (8th Cir. 2011)).  Here, Gisairo does not merely allege that certain Lenovo product lines contain a defect or that a product is at risk for manifesting this defect.  Rather, he alleges that the specific Flex 5 laptop that he purchased exhibited the alleged defects and that the Yoga 730 exhibits those same defects.  Therefore, Gisairo has standing to assert his own individual claims as to the alleged defects in the Flex 5 laptop.

Lenovo argues, however, that Gisairo fails to show sufficient similarity between the Yoga 730 and the Flex 5.  When constructing a limiting principle for standing as to non-purchased products in a putative class-action lawsuit, courts evaluate whether "there are substantial similarities in the accused products and whether there are similar misrepresentations across product lines such that Plaintiffs' injury is sufficiently similar to that suffered by class members who purchased other accused products."  *Brown v. Hain Celestial Grp., Inc.*, 913 F. Supp. 2d 881, 891 (N.D. Cal. 2012); *accord Barclay*, 2020 WL 6083704, at *6 (observing that the relevant question is whether the products and alleged misrepresentations are substantially similar and "the distinction between product types may . . . create an issue [as to] the typicality of Plaintiffs' claims or the adequacy of their representation, which is better resolved at class certification").  This approach logically permits a preliminary analysis of whether there is substantial similarity between the Flex 5 and the Yoga 730.[2]

---

[2]    The Court expressly reserves making a determinative analysis of whether Gisairo satisfies the typicality, adequacy, and commonality requirements for purposes of a Rule 23, Fed. R. Civ. P., motion for class certification for the unpurchased products, until any such motion is made.

Here, Gisairo's misrepresentation claims arise from two features of the allegedly defective laptop models—360-degree flexibility and display quality. The Flex 5 and the Yoga 730 are Lenovo laptop models with substantial similarities in that both were marketed as 2-in-1 devices with 360-degree flexibility. And both Gisairo and the putative class members allegedly suffered substantially similar injuries, namely, allegedly malfunctioning or nonfunctioning displays arising from issues related to an embedded DisplayPort cable that both models use and the associated costs and frustrations arising from Lenovo's alleged failures to fix customers' malfunctioning or nonfunctioning displays. Consequently, there are substantial similarities between the Flex 5 and the Yoga 730 for purposes of resolving the pending motion to dismiss.

In light of this conclusion, the issue of whether Gisairo has standing to represent putative class members who purchased Yoga 730 laptops is deferred until the class-certification stage.

## II.       Failure to State a Claim Under Federal Rule of Civil Procedure 12(b)(6)

Lenovo also argues that several of Gisairo's claims must be dismissed for failure to state a claim on which relief can be granted. A complaint must allege sufficient facts such that, when accepted as true, a facially plausible claim to relief is stated. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). If a complaint fails to state a claim on which relief can be granted, dismissal is warranted. *See* Fed. R. Civ. P. 12(b)(6). When determining whether a complaint states a facially plausible claim, a district court accepts the factual allegations in the complaint as true and draws all reasonable inferences in the plaintiff's favor. *Blankenship v. USA Truck, Inc.*, 601 F.3d 852, 853 (8th Cir. 2010). Factual allegations

must be sufficient to "raise a right to relief above the speculative level" and "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007). Mere "labels and conclusions" are insufficient, as is a "formulaic recitation of the elements of a cause of action." *Id.* at 555. And legal conclusions couched as factual allegations may be disregarded. *See Iqbal*, 556 U.S. at 679. The Court addresses each of Lenovo's arguments in turn.

### A.      Public Benefit (Counts I, III, and V)

Lenovo argues that Gisairo's claims under the MPCFA (Count I), MUTPA (Count III), and pursuant to Minnesota's private attorney general statute (Count V) fail to adequately allege that this action serves a "public benefit." Gisairo counters that Lenovo's argument fails because Lenovo continues to advertise or sell the Flex 5 and the Yoga 730 laptops and injunctive relief would prevent harm to consumers who are unaware of the defects.

Private plaintiffs who seek remedies for a violation of Minnesota's consumer-protection statutes must do so through Minnesota's private attorney general statute (Private AG Statute). Minn. Stat. § 8.31, subdiv. 3a; *Buetow v. A.L.S. Enters., Inc.*, 650 F.3d 1178, 1184 (8th Cir. 2011). This includes violations arising under the MPCFA and MUTPA. *Id*., at subdiv. 1. A plaintiff may use the Private AG Statute to pursue civil remedies only if the plaintiff can demonstrate that the action serves a "public benefit." *Ly v. Nystrom*, 615 N.W.2d 302, 314 (Minn. 2000). Although "the public benefit requirement is not onerous, it is a necessary element of a plaintiff's cause of action under the [Private AG Statute]."

*Select Comfort Corp. v. Tempur Sealy Int'l, Inc.*, 11 F. Supp. 3d 933, 937 (D. Minn. 2014) (citations omitted) (internal quotation marks omitted).

"Minnesota courts have not definitively delineated what factors are necessary to establish a public benefit," however a court may examine "the degree to which the defendants' alleged misrepresentations affected the public; the form of the alleged misrepresentation; the kind of relief sought; and whether the alleged misrepresentations are ongoing." *Id.* (internal quotation marks omitted). When plaintiffs seek only damages, courts typically find no public benefit. *Id.* And whether the complaint includes a request for injunctive relief is not dispositive. *Id.* Generally, a public benefit is found "when the plaintiff seeks relief primarily aimed at altering the defendant's conduct (usually, but not always, through an injunction) rather than seeking remedies for past wrongs (typically through damages)." *Id.* at 938 (quoting *Buetow v. A.L.S. Enter., Inc.*, 888 F. Supp. 2d 956, 960 (D. Minn. 2012)). Individual damages enrich or reimburse the plaintiff, they do not advance the public interest. *Id.*

Gisairo identifies the following allegations to demonstrate that he has adequately alleged a public benefit: (1) Lenovo engaged in false and misleading marketing of the Flex 5 and Yoga 730 laptops through its website and YouTube channel; (2) Lenovo's misrepresentations of the way in which the Flex 5 and Yoga 730 laptops could be used were made to public consumers who viewed the devices on Lenovo's website; (3) Lenovo misrepresented the ability of the Flex 5 and Yoga 730 laptops to fully function as a 2-in-1 computer on its website and through other marketing and sales practices; (4) a market remains for the Flex 5 laptops that Lenovo continues to advertise through its website; and

(5) the Flex 5 and Yoga 730 laptops are similarly designed and manufactured with a defect that makes them unfit for their intended purpose. Gisairo adds that these practices impact the public at large.

But these allegations merely suggest Lenovo's alleged misrepresentations are directed to the general public. Although courts have concluded that a public benefit exists for claims "eliminating false or misleading advertising, [courts] have not held that this establishes a *per se* public benefit" and allegations that merely "address false advertising to the general public are not enough to establish a public benefit." *Select Comfort*, 11 F. Supp. 3d at 938; *see, e.g.*, *Select Comfort Corp. v. Sleep Better Store, LLC*, 796 F. Supp. 2d 981, 986–87 (D. Minn. 2011) (holding that claims of misleading advertising to the general public *supported* plaintiff's claim that it alleged a public benefit, but that plaintiff nonetheless failed to sufficiently allege a public benefit); *accord Pecarina v. Tokai Corp.*, No. CUV,01-1655 ADM/AJB, 2002 WL 1023153, at *5 (D. Minn. May 20, 2002) (finding plaintiffs failed to demonstrate a public benefit even though they alleged false advertising perpetrated to the consuming public with respect to faulty lighters).

Gisairo makes a single conclusory allegation that "[t]his action will benefit the public interest and therefore meets the requirements of Minnesota's Private Attorney General Statute." But this allegation fails to address how or why there is any public benefit to the action. *Select Comfort*, 11 F. Supp. 3d at 939. Moreover, the primary relief sought by Gisairo is injunctive relief and monetary damages for *past* harm. The relief sought does not appear to be primarily directed to altering Lenovo's conduct but instead to receiving monetary damages. *Buetow*, 888 F. Supp. 2d at 960; *see also Select Comfort*, 11 F. Supp.

3d at 939 (observing that, even though plaintiff sought to "enjoin Defendant from continuing its false advertising and marketing," the relief sought was not primarily aimed at altering the defendant's conduct because the complaint requested "payment of damages . . . all profits and/or ill-gotten gains" (internal quotation marks omitted)).  To the extent that Gisairo seeks monetary damages in connection with his claims for past harm, there is no public benefit.  *See, e.g.*, *Buetow*, 888 F. Supp. 2d at 961 (explaining that "seeking remedies for past wrongs . . . through damages" typically does not satisfy the public-benefit requirement); *Kinetic Co. v. Medtronic, Inc.*, 672 F. Supp. 2d 933, 946 (D. Minn. 2009) (observing that, when "a product is recalled from the market before a lawsuit is filed, a plaintiff may not be able to argue that 'but for' its lawsuit, a defendant would have continued to make false representations" in order to demonstrate a public benefit).  Without more, allegations of false or misleading advertising, as Gisairo alleges in the complaint, are insufficient to establish a public benefit.  *Select Comfort*, 11 F. Supp. 3d at 938.

The parties also disagree as to whether the alleged misrepresentations are ongoing. Courts in this District have found no public benefit when a product no longer is sold or the allegedly false advertisements have ceased.  *Buetow*, 888 F. Supp. 2d at 961; *Overen v. Hasbro, Inc.*, No. 07-1430, 2007 WL 2695792, at *3 (D. Minn. Sept. 12, 2007) (when "the product at issue . . . is no longer being sold, and the advertising used to support that product is likewise no longer being used," there is no public benefit).  Gisairo represents that the Flex 5 is still being sold, but Lenovo maintains that the Flex 5 is no longer available for

sale.  It is undisputed, however, that the Yoga 730 is being sold.[3]  Yet because there are sufficient facts to support the Court's foregoing analysis as to the other public-benefit factors, the Court need not resolve any dispute as to whether any particular product is still being sold.

In summary, because Gisairo has alleged insufficient facts to establish that the action serves a public benefit, the Court grants Lenovo's motion to dismiss Counts I, III, and V.

### B.      Minnesota Deceptive Trade Practices Act (Count II)

Lenovo argues that Gisairo's MDTPA (Count II) claim fails because he does not allege an irreparable injury or threat of future harm to himself.

The sole remedy under the MDTPA is injunctive relief.  *Nelson v. Am. Fam. Mut. Ins. Co.*, 262 F. Supp. 3d 835, 862 (D. Minn. 2017), *aff'd*, 899 F.3d 475 (8th Cir. 2018). To withstand a motion to dismiss, a plaintiff asserting a claim under the MDTPA "must allege an irreparable injury or threat of future harm" to the plaintiff.  *Knotts v. Nissan N. Am., Inc.*, 346 F. Supp. 3d 1310, 1328 (D. Minn. 2018) (citing *Johnson v. Bobcat Co.*, 175 F. Supp. 3d 1130, 1140 (D. Minn. 2016)); *see also Damon v. Groteboer*, 937 F. Supp. 2d 1048, 1071 (D. Minn. 2013) (dismissing MDTPA claim for failure to present evidence of a risk of future harm).  Here, Gisairo has not alleged an irreparable injury.  Therefore, to survive Lenovo's motion to dismiss, Gisairo must allege a threat of future harm.  Gisairo

---

[3]      As of the date of this Order, some of the hyperlinks to Lenovo's website included in the complaint appear to indicate that Lenovo no longer sells some or all Yoga 730 models.

argues that if he were "to purchase another laptop from Defendant, he could not know for certain whether the [d]efect would be present with that product as well."  But as it is uncertain that Gisairo will face this harm, this contention is merely speculative.  Because Gisairo's complaint fails to allege nonspeculative future harm as to himself, his MDTPA claim fails.

Accordingly, the Court grants Lenovo's motion to dismiss Count II.

### C.    MFSAA Claim (Count IV)

Lenovo argues that Gisairo's MFSAA claim (Count IV) must be dismissed because Gisairo fails to plead that Lenovo's allegedly false statements were made or viewed in Minnesota.

To plead a MFSAA claim adequately, a party must allege, among other elements, that the defendant's false statements occurred in Minnesota.  Minn. Stat. § 325F.67 (requiring allegedly false statements to have been made "in this state"); *Knotts*, 346 F. Supp. 3d at 1326–27 (dismissing MFSAA claim because plaintiff did not allege that "Plaintiff viewed [the advertisement], when he viewed it, and if he viewed it in Minnesota").  Here Gisairo's complaint, however, lacks any allegation that he viewed Lenovo's statements regarding the Flex 5 in Minnesota.

For this reason, the Court grants Lenovo's motion to dismiss Count IV.[4]

---

[4]    Because Lenovo's motion to dismiss Counts I through V is granted on the basis that Gisairo has failed to state a claim as to these counts, the Court need not address Lenovo's alternative arguments that Gisairo has failed to satisfy the Rule 9(b), Fed. R. Civ. P., pleading standards for these claims and that these claims are based on nonactionable puffery.

**D.      Breach-of-Implied-Warranty Claims (Counts VII and VIII)**

Lenovo argues that Gisairo's breach-of-implied-warranty claims (Counts VII and VIII) brought under the Magnuson-Moss Warranty Act (MMWA) and Minnesota state law, respectively, must be dismissed because Lenovo's limited express warranty disclaims any implied warranties.

"The MMWA grants the holder of a limited warranty a federal cause of action for a breach of warranty under the applicable state law." *Sipe v. Workhorse Custom Chassis, LLC*, 572 F.3d 525, 530 (8th Cir. 2009) (applying Minnesota law to an asserted MMWA breach-of-warranty claim). To establish a breach of warranty under Minnesota law, there must be a warranty, a breach of that warranty, and a causal link between the breach and the alleged harm. *Id.* Minnesota law recognizes an implied warranty of fitness for a particular purpose. *Luther v. Standard Conveyor Co.*, 89 N.W.2d 179, 183–84 (Minn. 1958) (observing that when "the buyer fully informs the seller of his particular needs and the seller undertakes to supply an article suitable for the purpose intended, there is an implied warranty that the article will be fit for that purpose"). Minnesota law also recognizes an implied warranty of merchantability. Minn. Stat. § 336.2-314(1) ("Unless excluded . . . , a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind.").

A manufacturer may disclaim an implied warranty of merchantability or fitness. Minn. Stat. § 336.2-316(2). Any claim challenging an implied warranty of merchantability or fitness fails under such circumstances. *Id.* An implied warranty of merchantability is disclaimed when the express language is conspicuous and mentions merchantability. *Id.*;

*accord Knotts*, 346 F. Supp. 3d at 1321–22.  Similarly, an implied warranty of fitness may be disclaimed when the disclaimer is in "writing and conspicuous."  Minn. Stat. § 336.2-316(2) (explaining that "[l]anguage to exclude all implied warranties of fitness is sufficient if it states, for example, that 'There are no warranties which extend beyond the description on the face hereof' "); *see also* Minn. Stat. § 336.1-201(b)(10) (defining "conspicuous" to include text "in capitals" and "in contrasting type, font, or color to the surrounding text").  Whether disclaimer language is conspicuous is a question of law.  *See Am. Comput. Tr. Leasing v. Jack Farrell Implement Co.*, 763 F. Supp. 1473, 1488 (D. Minn. 1991).

Lenovo argues that Gisairo's breach-of-warranty claims fail because Gisairo's implied-warranty claims were disclaimed by Lenovo's limited warranty.  Gisairo challenges the application of this warranty on two grounds, first arguing that the warranty is not conspicuous, and second arguing that the warranty is unconscionable and therefore unenforceable.  These arguments are addressed in turn.

Lenovo's Limited Express Warranty states in bold text and capitalized letters as shown here:

> **THIS WARRANTY IS YOUR EXCLUSIVE WARRANTY AND REPLACES ALL OTHER WARRANTIES OR CONDITIONS, EXPRESS OR IMPLIED, INCLUDING, BUT NOT LIMITED TO, ANY IMPLIED WARRANTIES OR CONDITIONS OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE.**

Lenovo's Limited Express Warranty specifically disclaims the implied warranties of merchantability or fitness.  The warranty's use of the term "**MERCHANTABILITY**" paired with the conspicuous display of the language—namely, its bold font, capitalization,

16

and location on the first page of the warranty—conspicuously disclaims the implied warranty of merchantability.   Minn. Stat. § 336.2-316(2).   Similarly, the warranty's language that "**THIS WARRANTY IS YOUR EXCLUSIVE WARRANTY AND REPLACES ALL OTHER WARRANTIES**" also conspicuously disclaims the implied warranty of fitness and is consistent with the example of a disclaimer provided in the statute.  *Id.*  Moreover, the United States Court of Appeals for the Eighth Circuit expressly held that warranty disclaimer language substantially similar to the language at issue here was valid and comported with the requirements of Minnesota law.  *See Transp. Corp. of Am. v. Int'l Bus. Machines Corp.*, 30 F.3d 953, 959 (8th Cir. 1994) (assessing language stating that "ALL OTHER WARRANTIES, EXPRESS OR IMPLIED, INCLUDING, BUT NOT LIMITED TO, THE IMPLIED WARRANTIES OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE").   Therefore, the disclaimer in Lenovo's limited warranty is conspicuous.

Gisairo argues that Lenovo's attempt to disclaim or limit its implied warranties is unconscionable and unenforceable.  Lenovo counters that Gisairo's unconscionability claims lack plausible facts and, therefore, fail to survive Lenovo's motion to dismiss.

Under Minnesota law, when a plaintiff alleges that a disclaimer is unconscionable, "the parties shall be afforded a reasonable opportunity to present evidence as to its commercial setting, purpose and effect to aid the court in making the determination." Minn. Stat. § 336.2-302(2).  Courts interpreting Minn. Stat. § 336.2-302(2) have considered whether the plaintiff has sufficiently alleged unconscionability.  *See McQueen v. Yamaha*

*Motor Corp., U.S.A.*, ___ F. Supp. 3d ___, 2020 WL 5630006, at *10 (D. Minn. 2020); *see also Johnson*, 175 F. Supp. 3d at 1144.

Gisairo's complaint alleges that "[a]ny attempt by Lenovo to disclaim or limit its implied warranties is unconscionable and unenforceable under the circumstances here." Standing alone, this legal conclusion without a factual basis would be insufficient to meet the pleading standards. *See Iqbal*, 556 U.S. at 679. But Gisairo also alleges that Lenovo knowingly sold a defective product without informing consumers about the defect and that, because of this knowledge, Lenovo's attempts to limit its implied warranties are unenforceable. Similar allegations have been found sufficient to survive a motion to dismiss. *See McQueen*, 2020 WL 563006, at *10 (observing that, when a plaintiff alleges unconscionability, the plaintiff must be afforded a reasonable opportunity to present evidence thereof); *Johnson*, 175 F. Supp. 3d at 1144 (same). At this stage in the litigation, the Court concludes that these claims in Gisairo's complaint are sufficient. To the extent that any argument for dismissal of Counts VII and VIII rests on a determination of unconscionability, a decision on that matter is premature until the parties have had an opportunity to submit evidence as to the disclaimer's commercial setting, purpose, and effect. *See Johnson*, 175 F. Supp. 3d at 1144.

Accordingly, the Court denies Lenovo's motion to dismiss Counts VII and VIII.

### E.     Unjust Enrichment (Count X)

Lenovo also argues that Gisairo's unjust enrichment claim (Count X) fails because a contractual warranty governs the relationship between Lenovo and Gisairo.

To state a claim for unjust enrichment under Minnesota law, a plaintiff must allege "that another party knowingly received something of value to which he was not entitled, and that the circumstances are such that it would be unjust for that person to retain the benefit." *Cobb v. PayLease LLC*, 34 F. Supp. 3d 976, 989 (D. Minn. 2014) (internal quotation marks omitted). Because Rule 8(d)(2)–(3), Fed. R. Civ. P., expressly permits a party to plead alternative or inconsistent claims or defenses, courts routinely decline to dismiss unjust-enrichment claims when pleaded in the alternative. *See, e.g.*, *United States v. R.J. Zavoral & Sons, Inc.*, 894 F. Supp. 2d 1118, 1127 (D. Minn. 2012) (concluding that plaintiff "may maintain this [unjust-enrichment] claim as [an] alternative claim for relief under Rule 8 of the Federal Rules of Civil Procedure"); *Cummins Law Office, P.A. v. Norman Graphic Printing Co.*, 826 F. Supp. 2d 1127, 1130 (D. Minn. 2011) (observing that courts "routinely permit the assertion of contract and quasi-contract claims together" and declining to dismiss plaintiff's unjust-enrichment claim on that basis).

A claim for unjust enrichment fails when there is "no dispute that a written contract governs the at-issue conduct." *HomeStar Prop. Sols., LLC v. Safeguard Props., LLC*, 370 F. Supp. 3d 1020, 1029–30 (D. Minn. 2019). Indeed, such claims will be dismissed when there is an adequate legal remedy available *even if* the claims giving rise to the legal remedy were inadequately pled. *Drobnak v. Andersen Corp.*, 561 F.3d 778, 786–87 (8th Cir. 2009) (explaining that no claim for unjust enrichment lies when an adequate legal remedy exists even if such a remedy were foreclosed by a party's failure to meet the statutory notice and Rule 9(b), Fed. R. Civ. P., pleading requirements); *see also United States v. Bame*, 721 F.3d 1025, 1031 (8th Cir. 2013) (recognizing that "it is the existence of an adequate legal

remedy that precludes unjust enrichment recovery" even if "plaintiff failed to pursue adequate legal remedies").

Gisairo sufficiently pleads an unjust-enrichment claim—that Lenovo knowingly received payment in exchange for allegedly defective products and that Lenovo's retention of that payment is unjust because the benefit received was by way of false, deceptive, and misleading marketing.  But Gisairo's unjust-enrichment claim is barred because Lenovo's Limited Express Warranty governs the party's rights in this instance.  *In re Hardieplank Fiber Cement Siding Litig.*, 284 F. Supp. 3d 918, 980 (D. Minn. 2018) (concluding that a party's unjust-enrichment claim was barred "because an enforceable contract exists between the parties—the Limited Warranty").

Gisairo argues that, because his unjust-enrichment claim is pleaded in the alternative as a stand-alone claim, it should be allowed to move forward.  But an equitable claim does not lie when the existence of an available legal remedy is undisputed.  *Loftness Specialized Farm Equip., Inc. v. Twiestmeyer*, 742 F.3d 845, 854 (8th Cir. 2014) (reasoning that the dismissal of an unjust-enrichment claim was legally sound and plaintiffs "were not entitled to plead unjust enrichment in the alternative because the parties' relationships were governed by various contracts," and "[s]o long as an adequate legal remedy exists, equitable remedies like unjust enrichment are not available").  Here, Gisairo does not argue that the Limited Express Warranty fails to provide an adequate legal remedy.  Therefore, Gisairo cannot proceed with his unjust-enrichment claim.

Accordingly, the Court grants Lenovo's motion to dismiss Gisairo's unjust-enrichment claim, Count X.

## ORDER

Based on the foregoing analysis and all of the files, records, and proceedings herein,

**IT IS HEREBY ORDERED** that Defendant Lenovo (United States) Inc.'s motion to dismiss Plaintiff Martin Gisairo's first amended complaint, (Dkt. 32), is **GRANTED IN PART** and **DENIED IN PART** as follows:

     1.     Lenovo's motion to dismiss Counts I, II, III, IV, V and X is **GRANTED**, and those claims are **DISMISSED WITHOUT PREJUDICE**; and

     2.     Lenovo's motion to dismiss Counts VII and VIII is **DENIED**.

Dated:  February 2, 2021

                                                  s/Wilhelmina M. Wright
                                                  Wilhelmina M. Wright
                                                  United States District Judge